**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JOSEPH NEIL DE LA GARZA,　　　　　§
　　　　*Plaintiff*　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
-vs-　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
CITY OF NEW BRAUNFELS, DEREK　　§　　5:19-CV-01455-XR
WOELFEL, NBPD OFFICER; CODY　　　§
BIANCHI, NBPD OFFICER; DONALD　　§　　*Consolidated with:* 5:20-cv-00041-XR
KIMBRELL, NBPD OFFICER; AND　　　§
JAMES BELL, NBPD SERGEANT;　　　§
　　　　*Defendants*　　　　　　　　　§

## <u>ORDER</u>

On this date, the Court considered the motion for summary judgment (ECF No. 17) filed by Defendants Derek Woelfel, Cody Bianchi, Donald Kimbrell, and James Bell. No response has been filed. After careful consideration, the Court issues the following order.

## BACKGROUND

These consolidated cases arise out of events leading up to Plaintiff Joseph Neil De La Garza's arrest in December 2017 by Officers Derek Woelfel, Cody Bianchi, Donald Kimbrell, and James Bell (the "Individual Defendants" or the "Officers") of the New Braunfels Police Department ("NBPD"). Plaintiff asserts that on the evening of December 13, 2017, he was shopping at a Walgreens located off 1-35 in San Antonio, Texas. Plaintiff claims that he tendered cash payment for items from the pharmacy and presented his state identification but that Walgreens personnel complained to NBPD that he had stolen items. ECF No. 1 ¶ 1.

Responding to the report from Walgreens, NBPD went to Plaintiff's residence in San Antonio. *Id.* ¶ 2. Defendant Woelfel entered Plaintiff's property "past a firmly latched gate and fence" and walked onto his front porch and into his backyard. At the time that NBPD arrived at Plaintiff's residence and entered his property, Plaintiff's son was the only one home. *Id.* ¶ 2.

Plaintiff's son did not consent to NBPD's entry and became "frightened and concerned" by their presence. *Id.* Plaintiff arrived home and saw NBPD on his property. *Id.* ¶ 3. According to Plaintiff, he "stopped to tell [Defendant Bianchi] that he had paid for the items in question" and told the officer that he would "take this up" at his wife's workplace, Huisache Grill, about a mile away from Plaintiff's house. *Id.* ¶¶ 3, 7. Plaintiff proceeded to drive to Huisache Grill; Defendants Bianchi, Woelfel, and Kimbrell followed him there and placed him under arrest. *Id.* ¶¶ 7–8.

Plaintiff was indicted for evading arrest on April 10, 2019, in the 207th District Court of Comal County, Texas. *See* Register of Actions, *State of Texas v. Joseph Neil De La Garza*, No. CR2019-402, http://public.co.comal.tx.us/CaseDetail.aspx?CaseID=950152 (last visited July 19, 2021). The case is set for a jury trial on August 3, 2021. *Id.*

Plaintiff originally filed this action in the 274th Judicial District Court of Comal County, Texas on December 13, 2019, asserting a single claim for false imprisonment in violation of his rights under the U.S. and Texas constitutions against the City of New Braunfels, the NBPD, and the Individual Defendants. Three days later, Plaintiff filed a nearly identical suit—against the same Defendants and based on the same factual allegations—directly with this Court in case number 5:19-cv-01455-XR. The state-court case was subsequently removed to federal court on the basis of federal question jurisdiction and consolidated with case 5:19-CV-01455-XR for all purposes. *See De La Garza v. City of New Braunfels et al.*, No. 5:20-CV-41-XR, ECF Nos. 1, 2.

Defendants City of New Braunfels ("City") and NBPD filed a Motion to Dismiss on January 13, 2020. ECF No. 4. This Court granted the City and NBPD's Motion to Dismiss on April 29, 2020. ECF No. 15. In doing so this Court held that (1) NBPD lacked jural existence as a party defendant; and (2) Plaintiff failed to state a *Monell* claim for municipal liability against the City that would entitle Plaintiff to relief under 42 U.S.C. § 1983. ECF No. 15 at 3–4.

The Individual Defendants now move for summary judgment, arguing that Plaintiff's state-court claim must be dismissed pursuant to pursuant to Section 101.106(f) of the Texas Tort Claims Act ("TTCA") and that his Section 1983 claim is barred by the statute of limitations. *See* ECF No. 17. No response has been filed, and the time for doing so has expired.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006).

To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). "To obtain summary judgment, 'if the movant bears the burden of proof on an issue . . . because . . . as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in his favor.'" *Access Mediquip, L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* at 164. When a plaintiff fails to respond to the defendant's motion for summary judgment, the inquiry must be whether the facts presented by the defendant create an appropriate basis to enter summary judgment against the plaintiff. *Id.*

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Analysis

### A. Plaintiff's state-law tort claims against the Officers must be dismissed.

Plaintiff's state-law claim for false imprisonment against the Officers in their individual capacities must be dismissed pursuant to the Section 101.106(f) of the TTCA. Entitled "Election of Remedies," section 101.106 provides:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On

the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). The TTCA defines an employee as a "person, including an officer or agent, who is in the paid service of a governmental unit . . . ." *Id.* § 101.001(2). Further, section 101.001 states, in relevant part, that "[i]n this chapter: (3) "Governmental unit" means: . . . (B) a political subdivision of this state, including any city. . ." *Id.* § 101.001(3)(B).

The Texas Supreme Court recently explained section 101.106(f)'s application in *Garza v. Harrison*, 574 S.W.3d 389, 393-94 (Tex. 2019). The election-of-remedies provision in section 101.106(f) of the TTCA requires courts to grant a motion to dismiss a lawsuit against a governmental employee sued in an official capacity but allows the governmental unit to be substituted for the employee. As defined in section 101.106(f), a governmental employee is effectively sued in an official capacity when the suit (1) is "based on conduct within the general scope of that employee's employment" and (2) "could have been brought under [the TTCA] against the governmental unit." *Id.* at 394. Even when the plaintiff purports to bring the claims against the employee in their individual capacity, as in *Garza*, the claims will be deemed official capacity claims subject to section 101.106(f) if these conditions are met. By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct. *Garza*, 574 S.W.3d at 393-94.

Section 101.106 alters the common-law scheme of employee tort liability and requires a plaintiff to decide at the outset whether an employee acted independently and is solely liable or acted within the general scope of her employment such that the governmental unit is vicariously liable. *Id.* at 399. Section 101.106's scheme favors expedient dismissal of government employees

5

when suit should have been brought against the government and "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the government employer." *Id.* If the tortious conduct occurred within the general scope of the employee's employment and claims could have been brought against the governmental unit under the TTCA, then suit will only lie against the governmental unit. "Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort. For purposes of section 101.106(f), the employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities." *Id.* at 401; *see also Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) ("This construction of section 101.106(f) does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment."); *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158 (5th Cir. 2017) ("Though Wilkerson alleges she acted in her personal capacity, Glazebrook gets governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f).").

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5). Here, the Individual Defendants were acting within the scope of their employment as City of New Braunfels Police Officers. There appears to be no dispute that the Individual Defendants were acting pursuant to their job responsibilities when they committed the actions of which Plaintiff complains. Instead, Plaintiff alleges that Individual Defendants' sworn affidavits of probable cause to arrest and detain him were made fraudulently or with reckless disregard for the truth. ECF No. 1 at 3-4. However, the employees' state of mind, motives, and competency are

irrelevant, so long as the conduct itself was pursuant to the employees' job responsibilities. *Garza*, 574 S.W.3d at 401.

Under the scope of employment prong, we ask whether there is a connection between the employee's job duties and the alleged tortious conduct. *Wilkerson*, 878 F.3d at 159; *Morrison v. Walker*, 704 F. App'x 369, 375 (5th Cir. 2017). The Texas Supreme Court recently concluded that "[n]othing in ... the statutory definition of 'scope of employment' suggests subjective intent is a necessary component of the scope-of-employment analysis." *Laverie v. Wetherbe*, 517 S.W.3d 748, 752–53 (Tex. 2017). Instead, the TTCA "calls for an objective assessment of whether [an] employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Id.* at 753. If a connection exists between the employee's lawful job duties and the alleged misconduct, the actions are within the general scope of employment, even if the employee is motivated by ulterior motives or personal animus and the tort would thus appear to be "unauthorized." *Wilkerson*, 878 F.3d at 159 (argument that tortious interference by employee exceeded scope of employment because it was not authorized was "too narrow a view" when conduct was made in an official capacity and part of employee's general role).

Even intentional torts can be within the scope of employment. *See Hundall v. Univ. of Tex. At El Paso*, No. EP-13-00365-DCG, 2014 WL 12496895 (W.D. Tex. Feb. 21, 2014) ("Plaintiff's claims for invasion of privacy, defamation, libel, slander, civil conspiracy, fraud, harassment, victimization, negligence, gross negligence, assault, malice, and medical malpractice all arise from communications and interactions with the individual defendants at UTEP. Since Plaintiff consistently and repeatedly asserts throughout the complaint that the individual defendants were acting as "agent[s] of UTEP," the Court finds no reason to conclude to the contrary and thus finds that the first prong is satisfied."); *Valentine v. City of Austin*, No. A-15-CV-482, 2015 WL

12942440, at *5 (W.D. Tex. Nov. 10, 2015) ("Thus, any fraud or other intentional tort claims Valentine would seek to bring against the individual police officers defendants would be foreclosed by §101.106(f)."), report and recommendation adopted in relevant part by *Valentine v. City of Austin*, No. 1-15-CV-482, 2016 WL 7756808, at *2 (W.D. Tex. Jan. 20, 2016); *Fink v. Anderson*, 477 S.W.3d 460, 468 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Thus, the fraud claim was subject to Section 101.106(f) dismissal because the actions taken by the governmental employees—even though pleaded as an intentional tort—were within their scope of employment."). Here, there is no genuine dispute that the scope of employment prong is met.

As to the second element, Plaintiff could have and did bring a false imprisonment claim against the government unit, the City. ECF No. 1 at 1. A governmental unit is "a political subdivision of the state, including any city. . ." TEX. CIV. PRAC. & REM. CODE § 101.103(B). All common-law tort theories alleged against a governmental unit are assumed to be "under the Tort Claims Act" and thus could have been brought against the governmental unit, even if the governmental unit's immunity is not waived by the Act.[1] *Wilkerson*, 878 F.3d at 161-62 & n.16 ("In determining whether a claim "could have been brought under [the TTCA] against the governmental unit," § 101.106(f), it does not matter that the [defendant] would be immune from suit."); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (subsection (f) is satisfied even if the governmental unit's immunity is not waived under the Tort Claims Act). Section 101.106(f), then, asks not whether a plaintiff can succeed on the merits, but whether her claim sounds in tort. Plaintiff's claims sound in tort and "could have been brought" against the governmental employer.

---

[1]     Because Texas has not waived governmental immunity for intentional torts, including false imprisonment, the City is immune from Plaintiff's false imprisonment claim. TEX. CIV. PRAC. & REM. CODE § 101.057(2); *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

Here, the conditions of section 101.106(f) are satisfied as to the false imprisonment alleged against the Individual Defendants. Accordingly, the false imprisonment claim against them fail as a matter of law.

**B.      Plaintiff's § 1983 claims are stayed pending resolution of the criminal action.**

The statute of limitations for Section 1983 claims is "that which the State provides for personal-injury torts." *Wallace*, 549 U.S. at 387. Accordingly, the statute of limitations for Section 1983 claims in Texas is two years. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). This two-year statute of limitations began running on December 13, 2017, the date the incident leading to Plaintiff's complaints occurred. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007). Plaintiff's original petition was filed in state court on December 13, 2019, before the statute of limitations had expired. *See De La Garza v. City of New Braunfels, Texas*, 5:20-cv-00041-XR (W.D. Tex. Jan. 13, 2020), ECF No. 1-2. In his petition, Plaintiff alleged that the Individual Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution as well as the Texas constitution and statutes. *Id.*

Although Plaintiff did not specifically reference § 1983 in his state-court petition, the Supreme Court has clarified that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* (citing Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, & A. Steinman, Federal Practice and Procedure 644 (2014) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004) (Rule 8(a)(2) "indicates

that a basic objective of the rules is to avoid civil cases turning on technicalities"). The question is whether the factual allegations in the complaint state a claim upon which relief can be granted under a proper legal theory, not whether the correct statute is cited. *Id.*

To state a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005) (citations omitted); *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citations omitted). In his original petition, Plaintiff alleged a violation of his rights secured by the Constitution. *See* 5:20-cv-00041-XR (W.D. Tex. Jan. 13, 2020), ECF No. 1-2 at 5 ¶ 1. ("Defendants falsely imprisoned Plaintiff in violation of his right to be free from unreasonable search and seizure pursuant to U.S. Const. Amends. IV, V and XIV"). The parties do not appear to dispute that the Individual Officers were acting under color of state law when they allegedly violated Plaintiff's rights under the Constitution when they entered onto Plaintiff's property "[i]n their purported investigation," followed him to Huisache Grill, arrested him, and completed a probable cause affidavit. *See* ECF No. 1-2 at 4–5; *United States v. Dillon*, 532 F.3d 379, 385 (5th Cir. 2008) ("An action occurs under color of law when there is '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *United States v. Classic*, 313 U.S. 299 (1941)). Accordingly, the Court concludes that Plaintiff stated a timely claim under Section 1983 in his original state-court petition, filed on December 13, 2019.[2] *See* 5:20-cv-00041-XR (W.D. Tex. Jan. 13, 2020), ECF No. 1-2

---

[2]      Although the Court noted in its order granting the City and NBPD's motion to dismiss that Plaintiff's § 1983 claims were time-barred, that conclusion was not necessary to the Court's holding that NBPD was not a proper party to the case and that Plaintiff failed to state a *Monell* claim for municipal liability against the City. Upon reconsideration, the Court concludes that Plaintiff did state a timely § 1983 claim in his state-court petition.

While Plaintiff's § 1983 claims against the Individual Officers are timely, they must be stayed in light of the ongoing criminal proceedings against him in state court. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). In *Heck v. Humphrey*, the Supreme Court held that a Section 1983 claim for damages that "necessarily impl[ies] the invalidity of [the plaintiff's] conviction or imprisonment" does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* However, in *Wallace v. Kato*, the Supreme Court held that the *Heck* bar does not apply to a civil rights claim that would impugn pending criminal proceedings, and common practice supports the stay of such a civil rights claim pending resolution of the criminal case. 549 U.S. at 393–94. The Court explained:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* (citations omitted).

Plaintiff's civil rights claims are inconsistent with the criminal charges against him and impugn the legality of the criminal proceedings against him and his custody. Because Plaintiff's civil rights claims are interrelated with the pending state criminal proceedings, it would be futile to proceed with this civil rights case until the criminal proceedings are resolved.

Therefore, Plaintiff's § 1983 civil rights case is **STAYED** pending a resolution of Plaintiff's criminal proceedings. *See id.*

**CONCLUSION**

The Motion for Summary Judgment of Defendant Officers Woelfel, Bianchi, Kimbrell, and Bell is **GRANTED IN PART and DENIED IN PART**. Plaintiff's state-law false imprisonment claims against the Defendant Officers are dismissed pursuant to Texas Civil Practice & Remedies Code § 101.106(f). Plaintiff's Section 1983 claims against the Individual Officers remain to be tried.

Trial of Plaintiff's surviving claims must be abated, however, until the criminal case against him has been resolved. All remaining deadlines and settings, including trial, are therefore **VACATED**.

Given these circumstances, the Court concludes that this case is appropriate for administrative closure. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2014) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay.").

The Clerk's office is therefore **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case during the pendency of this stay. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request of any party or on the Court's own motion. Further, the parties may continue to file motions and other documents in the case.

It is **ORDERED** that the parties shall file a joint advisory with the Court stating the status of the pending criminal case every sixty (60) days from the date of this Order, and must file an advisory with this Court informing the Court of any disposition of the criminal proceedings (*i.e.*, dismissal, acquittal, conviction) within ten (10) days after resolution of the criminal proceedings.

The Clerk is **DIRECTED** to mail a copy of this Order to Joseph Neil De La Garza at 109

W. Court St, Seguin, TX 78155 and to provide a copy by email to jndelagarza101@gmail.com.

It is so **ORDERED**.

**SIGNED** this 16th day of August, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE